**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 23 2013, 9:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KURT A. YOUNG**
Nashville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEVIN GENE ROTINO, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 07A05-1205-CR-259 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BROWN CIRCUIT COURT
The Honorable Judith A. Stewart, Judge
Cause No. 07C01-0810-FC-436

**January 23, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Kevin Gene Rotino appeals his Class D felony dealing in marijuana conviction. He contends that there is insufficient evidence to sustain his conviction because the State failed to show both that manufacturing was taking place and that Rotino was either a principal or accomplice in the manufacturing. Finding that there is sufficient evidence to sustain his conviction, we affirm.

**Facts and Procedural History**

On September 26, 2008, Indiana Conservation Officer Captain Jason Lee received information about a marijuana-growing operation in a wooded area at the intersection of Bear Wallow Hill and Gatesville Road in Brown County. Captain Lee and Officer Brent Bohbrink went to the area in the woods where the operation was allegedly taking place, and Captain Lee could smell the "pungent odor of marijuana" from 200 to 225 feet away. Tr. p. 50. Using a "spotting scope," Captain Lee observed a white box trailer attached to a black pickup truck. The tailgate of the trailer had been lowered to form a table surface. Captain Lee saw three men sitting around the tailgate "cutting up and processing" marijuana. *Id.* at 52. After watching the three men for ten to fifteen minutes, Captain Lee and Officer Bohbrink went back to Nashville in order to obtain a search warrant.

Later that afternoon, Captain Lee and Officer Bohbrink returned to the wooded area with additional officers and saw the scene to be the same as it was earlier. *Id.* at 55. Captain Lee described the scene at trial as a "fairly elaborate set up" with "all parts of the process of taking a full [marijuana] plant and cutting it down into the pieces you actually are trying to keep and utilize." *Id.* at 63-64. There were drying racks where the cut

2

vegetation would be placed for drying, as well as three pairs of scissors in the midst of the marijuana being processed. *Id.* at 63, 66.

At the scene, the officers decided to split up and approach the site from both the north and the south. However, before the officers were in position, one of the men at the site, Casey Greene, spotted Captain Lee. The officers then entered the site, identified themselves as officers, and yelled for everyone to stop. When Greene, Rotino, and two other men ran, the officers pursued them. Officer Bohbrink eventually caught Rotino lying on his stomach in a creek bed.

No marijuana was found actually growing at the scene, but the officers collected all the marijuana that was there, along with the three pairs of scissors with marijuana residue on them. The marijuana was laid out to dry for several days and was then sent to the Indiana State Police Laboratory to be tested and weighed. The testing confirmed that the plants were marijuana and that they weighed a total of 10.72 pounds.

The State charged Rotino with Class C felony dealing in marijuana, Class D felony possession of marijuana, Class A misdemeanor possession of paraphernalia, Class A misdemeanor resisting law enforcement, and Class B misdemeanor visiting a common nuisance. A jury trial was held, and on the day of trial, the State dismissed the Class A misdemeanor possession of paraphernalia charge. The jury found Rotino guilty of the lesser-included Class D felony dealing in marijuana, Class D felony possession of marijuana, Class A misdemeanor resisting law enforcement, and Class B misdemeanor visiting a common nuisance. The trial court entered no judgment on Rotino's possession of marijuana conviction on double-jeopardy grounds and sentenced Rotino to one and

3

one-half years for dealing in marijuana, 180 days for resisting law enforcement, and ninety days for visiting a common nuisance, to be served concurrently.

Rotino now appeals his dealing in marijuana sentence only.

**Discussion and Decision**

Rotino contends that there is insufficient evidence to sustain his Class D felony dealing in marijuana conviction. Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence claim, this Court does not reweigh the evidence or judge the credibility of the witnesses. *Bond v. State*, 925 N.E.2d 773, 781 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*. We consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom and affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* Reversal is appropriate only when a reasonable trier of fact would not be able to form inferences as to each material element of the offense. *Id.*

Indiana Code section 35-48-4-10 governs dealing in marijuana and provides in relevant part:

> (a) A person who:
>      (1) knowingly or intentionally:
>           (A) manufactures; . . .
>                          *      *      *      *      *
>           marijuana, hash oil, hashish, salvia, or a synthetic drug, pure
>           or adulterated;
> commits dealing in marijuana, hash oil, hashish, salvia, or a synthetic drug,
> a Class A misdemeanor, except as provided in subsection (b).
>
> (b) The offense is:
>      (1) a Class D felony if:
>                          *      *      *      *      *

(B) the amount involved is:

　　(i) more than thirty (30) grams but less than ten (10) pounds of marijuana . . . .

Additionally, Indiana Code section 35-48-1-18 defines "manufacture" in relevant part as:

(1) the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes packaging or repackaging of the substance or labeling or relabeling of its container.

Rotino contends that there is insufficient evidence that any manufacturing was taking place. We disagree.

At trial, evidence was introduced that the site was used for "preparing" and "processing" the marijuana plants. Captain Lee testified that the unprocessed plants were on the tailgate that was being used as a worktable. Captain Lee then described that the leaves and stalks were removed, the leaves were cut into usable pieces, and the buds were removed. The leaves and buds were then placed on the drying racks that were inside the trailer. Tr. p. 62-63. Additionally, three pairs of scissors with "real heavy marijuana residue on the actual knives of the scissors" were found at the site among the marijuana plants. *Id.* at 66. This is sufficient evidence for a reasonable jury to determine that manufacturing of marijuana was taking place at the site through the preparing and processing of the plants.

However, Rotino also argues that in order to be manufactured, the marijuana must be prepared or processed "either directly or indirectly by extraction from substances of natural origin . . . ." I.C. § 35-48-1-18. He contends that "by extraction from substances of natural origin" applies to both "directly" and "indirectly," and therefore the activities

5

taking place at the site do not fit the definition of manufacturing since nothing was being extracted from the marijuana plants. Appellant's Br. p. 11-12. We find this argument to be without merit. "By extraction from substances of natural origin" applies only to "indirectly," applying to the instances where contraband is being derived from a natural source. In this case, however, the natural marijuana plant itself is the contraband, and it was being directly prepared and processed at the site. Therefore, no extraction from the plants was necessary under the statute in order for manufacturing to take place.

Finally, Rotino contends that there is insufficient evidence to show that he was a principal or accomplice in the manufacturing process. We again disagree, finding that there is sufficient evidence to show that Rotino was an accomplice, and "[i]n Indiana there is no distinction between the responsibility of a principal and an accomplice." *Stokes v. State*, 908 N.E.2d 295, 303 (Ind. Ct. App. 2009), *trans. denied*.

"We consider four factors to determine whether a defendant acted as an accomplice: (1) presence at the scene of the crime; (2) companionship with another at scene of crime; (3) failure to oppose commission of crime; and (4) course of conduct before, during, and after occurrence of crime." *Castillo v. State*, 974 N.E.2d 458, 466 (Ind. 2012). In this case, Rotino was present at the scene of the crime and failed to oppose the commission of the crime. At trial, Captain Lee testified that when the officers returned to the scene, he believed that Rotino was one of the three men who were seated at the table processing the marijuana plants with the three pairs of scissors found with marijuana residue on them. Tr. p. 66, 86. Additionally, while there is no evidence concerning Rotino's behavior before the occurrence of the crime, Rotino was at the table

6

where the processing was taking place, *id.* at 86, and immediately fled from the scene when the conservation officers showed up the second time before being caught by Officer Bohbrink. *Id.* at 56-57, 98. This behavior is sufficient to allow a reasonable jury to infer that Rotino was involved with the commission of the crime as an accomplice.

We therefore find that there is sufficient evidence that Rotino committed Class D felony dealing in marijuana and affirm his conviction.

Affirmed.

BAILEY, J., and BROWN, J., concur.